Good morning we have one motion on the motions calendar and we'll hear counsel in that case to begin with and then we'll turn to the day calendar. Good morning may it please the court my name is Harlan Protus and I represent move an appellant Frank LoCascio. Mr. LoCascio who's 85 years old and in failing health after 27 years behind bars seeks entry of an order recalling this court's mandate affirming his conviction. This court has the power to issue such an order and the facts as circumstances as set forth in our moving papers support issuance of such an order. Let me explain why. The case in our view presents two very simple questions. Was Judge Glasser required to recuse himself from hearing Mr. LoCascio's case and what is the appropriate remedy for Judge Glasser's failure to do so if he was required to do so. As detailed in our moving papers we respectfully submit that the answer to the first question is an affirmative yes. Why? Because as required by well-established Second Case and others in the Second Circuit any objective informed observer who's not a judge not someone associated with the judicial system an average man on the street familiar with the facts would reasonably question Judge Glasser's partiality based upon the facts set forth in our moving papers. You want the conviction vacated? Yes that's right Your Honor. Are you familiar with our decision in Baton? In Baton yes I am. So under that decision you've got to meet the standards for relief under AEDPA. I'm sorry I couldn't hear the last part. You have to meet the criteria for the filing of a successive section 2255 petition under AEDPA. Well we believe . . . Isn't that what that case says? You've moved to recall the mandate. We said that a motion to recall the mandate cannot relieve the petitioner of the obligation to meet the criteria under section 2255 when a previous section 2255 motion has been filed and denied on the merits. That's correct Your Honor but . . . Isn't that the situation here? No it's not the situation. There has not been a previous section 2255? There has been a previous 2255 but Baton said when a previous 2255 . . . when a motion to recall mandate presents the same arguments as presented in a prior 2255 you have to meet the requirements of the AEDPA. But that's not the circumstances here and I set forth that very very clearly in our reply papers. It's very clear in that case that and I'm happy to say that the appellant movement there presented the same arguments, the same facts that he had presented in the 2255 and that's why he did not qualify for a motion to recall mandate. The issue of Judge Glasser's failure to disclose in this case has never been presented to any court and the reason it's never been presented to any court is because no one knew. No one knew that Judge Glasser had a son who . . . Why wouldn't you use the 2255 vehicle to explore that? Why wouldn't we use the 2255? Well, because we were . . . You have to meet the standards for successive, right? You would have to meet the standards for successive. We're not trying an end run around the 2255. Then in that case every time we have someone who has a possibility of a successive will come to the court, come to this court and ask for us to recall the mandate in the original conviction. Why would we do that? I don't believe that this will open . . . I understand what Your Honor is saying. I don't believe this will open the floodgates to that type of motion. The reason that we . . . What cabins it? What cabins it? What cabins it is the standards for a motion to recall mandate and this case presents the type of grave, unforeseen circumstances for which a motion to recall mandate, which is inherently different from a 2255 and has its own standards and has its own case law. This is why we brought this as a motion to recall mandate, not as an application for a second or successive 2255. In any event . . . You concede you could not meet the standards, could not meet the criteria for a successive 2255? I don't believe that . . . Well, there's been no new constitutional law that's retroactively applicable. That's obviously not an issue in this case. And a recusal would do nothing to establish innocence. Well, it doesn't . . . I don't . . . It wouldn't not establish innocence. I don't believe that it's either . . . it's evidence in a traditional sense of evidence, either. So it doesn't fit within there. But in any event, as I was pointing out, we believe that this is a standalone motion and it stands on all fours. As I was saying, Your Honor, we believe that those two questions are an affirmative yes. Judge Glasser, when he sat down to read the motion, he said that he thought that one of the counts involved gambling in the State of Connecticut. That should have been flashing in neon lights in his face. That's a very big category, gambling in Connecticut. Well, it's one . . . I guess there are a lot of gamblers in Connecticut. But this was a charge that Mr. LoCascio was engaged in around a gambling operation in the State of Connecticut where Judge Glasser's son, as we set forth in our papers, was an assistant United States attorney. And he was an assistant United States attorney in the office that brought charges against a guy named Anthony McGalley, who also was charged with running gambling operations on behalf of the Gambino crime family in the State of Connecticut. And the combination of all of those factors should have led Judge Glasser to do one of two things. And he could have very easily resolved this if he had simply disclosed the fact that he had a son who he didn't do that. In fact, I believe, although it's implicit in the Heatley case, that Judge McCasey made that disclosure, just like Judge Glasser could have. And that question was adjudicated in the Heatley case. My client never had the opportunity to adjudicate that question because Judge Glasser never disclosed the fact that his son was an AUSA in Connecticut. And I believe that if he had, it would have . . . the parties would have been presented with the issues with regard to it. But now that we're 27 years on and it has just recently come to our attention that Judge Glasser should have made that, we're here before this Court asking this Court to recall the mandate. Judge Kearse was on the original appeal, I know, and asking it to recall the mandate based upon the fact that Judge Glasser did not make that disclosure and did not recuse himself. And that reversal of a conviction is the very well-established remedy for a failure of a judicial officer to recuse himself or make a disclosure like this. In fact, as I was sitting here and preparing for argument, I was thinking, Judge Kearse, about what the appellate panel would have done if this information had come to their attention right at the beginning, if this had been part of the direct appeal. And I was thinking that it's likely that the conviction would have been reversed. And there's no reason that it shouldn't be any different today, even though we're 27 years on, because this information was effectively unknowable to any of the parties. Judge Glasser didn't disclose it, and it was effectively unknowable to anybody. And it is that combination of circumstances that creates the appearance of partiality upon which our motion is based and upon which Judge Glasser should have recused himself or at the very least disclosed. Because as Judge Gleeson said in a quote in an article, there was nothing more important than the judge in the Gotti case. And if there was nothing more important to the government about . . . than the judge, then it was certainly nothing more important than the judge for the defense. Thank you. Good morning. May it please the Court. My name is James Gatta, and I'm an assistant United States Attorney in the Eastern District of New York. Your Honors, former Gambino family underboss Frank LoCascio's motion for this Court to recall its December 1993 mandate should be denied and be denied without a hearing. A motion to recall a mandate is, as the Court has noted many times, a remedy of last resort. I didn't quite understand. Recalled without a hearing. This is a hearing. Oh, I'm sorry, Judge. Without a hearing in the district court, as the defendant made that application. The defendant's motion that we're considering today is based on newly raised assumptions and insinuations, not newly discovered evidence, none of which comes close to suggesting the grave unforeseen or exceptional contingencies which would lead this Court to consider recalling its mandate. To permit the defendant to avoid the gatekeeping requirements of Section 2255 on these facts would open the floodgates to non-meritorious mandate recall motions after their legally permissible post-conviction avenues were foreclosed. And this is precisely the kind of last-ditch application that the AEDPA was designed to protect against. The defendant does not avail himself of the true safety valve or escape hatch in Section 2255 because, as he has acknowledged, he cannot meet it. Impugning the integrity of one of the most thoughtful and fair judges of this or any generation should not be a means to reopen a case that this Court has long since closed. Where the outcome of a case, in this case a high-ranking member of Lacoza-Nostra, is convicted of heinous crimes requiring a life sentence, has long been settled and the series of post-conviction applications over 25 years has not been cast any doubt upon. Your Honors, Mr. Protest raises the question that the circumstances of this case would have required Judge Glasser to recuse himself because any average man on the street would think so if made aware of the circumstance that his son was an assistant U.S. attorney in the District of Connecticut. But that is . . . the test would be, under Section 455, whether a reasonable person, knowing all the facts and circumstances, would determine that the judge's partiality would be called into question. Here, in order to do so, requires a series of assumptions that Judge Glasser's son, Mr. Glasser, would have had knowledge about a case that he was not assigned to and then would have provided that information to the judge. That is just simply not the case here. One last point before I sit down. Mr. Protest indicates in his motion papers and again this morning that there's no reason for the defendant to be considered under the Section 2255H requirements because these are not the same issues that were raised in the defendant's post-conviction applications. But that's precisely wrong. The only applicable provisions that would provide the defendant an opportunity to litigate this application would be the gatekeeping provisions of Section 2255 which the defendant has indicated that he cannot meet. Unless the Court has any additional questions for me, I will see the rest of my time. Thank you. Thank you. Do you want to take thirty seconds? Sure, Your Honor. I disagree with the government with respect to the reading of the case, the Batone case. The Batone case, my reading, and I'll leave it there, presented the same issues on the 2255 as had been previously presented and that's why the Circuit rejected it. This case is distinguishable. These facts have never been presented to this Court and Mr. LoCascio has never had an opportunity to have a Court adjudicate this. And I don't think there could be any more graver circumstances than when a man is on trial for his life. He received a life sentence of which he's done twenty-seven years and he will die in prison. There is nothing more grave than a life sentence. Thank you, Your Honor. Thank you very much. We'll reserve the decision.